UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00068-GNS-HBB

CHRISTONNA JOHNSON                                                                                    PLAINTIFF

v.

TAYLOR AUTO SALES, INC.                                                                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment[1] (DN 20). The motion is ripe for adjudication. For the reasons discussed below, the motion is **DENIED**.

### I.    BACKGROUND

Plaintiff Christonna Johnson ("Johnson") financed a 2013 Nissan Altima ("the vehicle") purchased from Defendant Taylor Auto Sales, Inc. ("Taylor Auto"). (Compl. ¶¶ 5-6).[2] The Retail Installment Contract and Security Agreement ("RISC Agreement") controlling the parties' transaction required Johnson to make 35 monthly payments of $380.00. (Compl. ¶ 8). Johnson also agreed to pay a deferred down payment of $624.96 in the form of four weekly payments as set forth in an addendum to the RISC agreement (the "RISC addendum"). (Compl. ¶¶ 9-11). Johnson failed to make any payments on her deferred down payment when they became due.

---

[1] Although styled as a motion for summary judgment, Plaintiff's motion is more accurately a motion for partial summary judgment, as it seeks judgement on only two of Plaintiff's six claims. (Pl.'s Mem. Supp. Mot. Summ. J. 1, DN 20-1 [hereinafter Pl.'s Mem.]; *see* Compl. ¶¶ 29-51, DN 1; Suppl. Compl. ¶¶ 24-25, DN 16).

[2] Paragraphs one through five of the Complaint are correctly labeled and then the sixth paragraph is misnumbered as paragraph four. (Compl. 1-2). This misnumbering persists through the Complaint. (*See generally* Compl.). The Court's references to the Complaint are made only to paragraphs following this misnumbering. Therefore, the Court will use the same numbering as those in the Complaint, and the Court's citation to paragraph five here is in reference to the second paragraph numbered as "5" in the "Statement of Facts" section.

1

(McPherson Aff. ¶ 7, DN 25-2). Taylor Auto repossessed the vehicle and subsequently resold it. (Griggs Aff. ¶¶ 12, 19, DN 25-3). Taylor Auto calculated that after reselling the car, Johnson still owed $195.70 but Taylor Auto never attempted to collect on the amount. (Griggs Aff. ¶¶ 22-23). Johnson then initiated this lawsuit asserting that Taylor Auto improperly calculated the payoff amount and charged unlawful fees in connection with the repossession and resale of the vehicle. (*See generally* Compl.). Johnson now moves for summary judgment on one of her state law claims for violation of the Kentucky Consumer Protection Act ("KCPA") and one of her federal law claims for violation of the Truth in Lending Act ("TILA"). (Pl.'s Mem. 1).

## II. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ."

2

Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

The Complaint contains five claims for relief and the Supplemental Complaint contains a single claim for relief. (Compl. ¶¶ 29-51; Suppl. Compl. ¶¶ 24-25). Johnson's four state law claims are for: (1) violations of KCPA; (2) voiding of contract and failure of consideration; (3) wrongful repossession; and (4) conversion. (Compl. ¶¶ 29-37, 42-51). Johnson's two federal law claims both arise under TILA. (Compl. ¶¶ 38-41; Suppl. Compl. ¶¶ 24-25). Johnson moves for summary judgment on her state law claim for violations of the KCPA and one of her claims under TILA. (Pl.'s Mem. Supp. Summ. J. 1, DN 20-1 [hereinafter Pl.'s Mem.]).

#### A. KCPA Claim

Johnson asserts that Taylor Auto violated KCPA by: (1) denying Johnson's right to a surplus; (2) failing to refund unearned finance charges; (3) denying Johnson's right to redeem; and (4) charging excessive fees in connection with the repossession and resale of the vehicle. (Pl.'s Mem. 11-15). All of these claims, with the exception of the allegation that Taylor Auto deprived Johnson of her right to redeem, stem from the assertion that Taylor Auto miscalculated Johnson's payoff amount and determined that she still owed money on the account instead of correctly calculating that Johnson was entitled to a refund. (Pl.'s Mem. 11-15).

The KCPA "makes 'unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce' unlawful." *Maynard v. Am. Med. & Life Ins. Co.*, No. 4:10-CV-00157-JHM, 2012 WL 2571160, at *3 (W.D. Ky. July 2, 2012) (citing KRS 367.170(1)). "The terms 'false, misleading and deceptive' are given their ordinary meaning as 'understood by a reasonably

3

prudent person of common intelligence.'" *Id.* (quoting *Stevens v. Motorists Mut. Ins. Co.*, 759 S.W.2d 819, 820 (Ky. 1988)). "The KCPA requires a plaintiff to prove an 'ascertainable loss of money or property . . . as a result' of an unfair method, act, or practice." *M.T. v. Saum*, 7 F. Supp. 3d 701, 706 (W.D. Ky. 2014) (citing KRS 367.220(1)). "[W]hen the evidence creates an issue of fact, that any particular action is unfair, false, misleading or deceptive it is to be decided by a jury." *Stevens*, 759 S.W.2d at 820.

First, with respect to the allegation that Taylor Auto deprived Johnson of her right to redeem, Johnson asserts that Taylor Auto sent her a notice that she had ten days to pay the full value of the car or else it would be sold at action. (Pl.'s Mot. Summ. J. Ex. C, DN 20-4 (showing the vehicle was repossessed on April 21, 2022, and explaining that the vehicle would be sold on May 1, 2022)). Johnson claims that Taylor Auto only gave her eight days to redeem before selling the vehicle. (Pl.'s Mem. 15; *see* Pl.'s Mot. Summ. J. Ex. D, DN 20-5 (showing the vehicle was resold on April 29, 2022)). Taylor Auto responds with the affidavit of its owner Jeremy Riggs ("Riggs") who claims that Johnson visited the dealership and stated that she would not be able to redeem the vehicle. (Griggs Aff. ¶ 16, DN 25-3). Evidence that Johnson stated an intention not to exercise her redemption rights creates a genuine issue of material fact as to whether a "reasonably prudent person of common intelligence" would have understood Taylor Auto's decision to sell the vehicle two days before Johnson's time-period for redemption expired as "false, misleading, [or] deceptive." *Maynard*, 2012 WL 2571160, at *3 (quoting *Stevens*, 759 S.W.2d at 820). It also, at least, creates a genuine issue of material fact as to whether Johnson suffered any "ascertainable loss of money or property . . . as a result" of Taylor Auto's action. KRS 367.220(1). Therefore, Johnson's motion is denied as to this basis.

Johnson's remaining bases for asserting that Taylor Auto violated KCPA stem from Taylor Auto's alleged failure to properly refund Johnson after reselling the vehicle. (Pl.'s Mem. 11-15). Johnson claims that Taylor Auto deprived her of her consumer rights under the Uniform Commercial Code ("UCC"). (Pl.'s Mem. 12-13). Johnson contends that the RISC addendum contained language eliminating Johnson's right to a surplus. (Pl.'s Mem. 12). Taylor Auto does not address Johnson's argument that the RISC addendum eliminated the right to a surplus, but instead argues Johnson was not entitled to a surplus. (Def.'s Resp. 9-10). Johnson avers that Taylor Auto incorrectly calculated the amount of money remaining on her account after the resale of the vehicle by failing to refund unearned finance charges and by charging unjustifiable fees. (Pl.'s Mem. 13-15). Johnson's argument that the language of the RISC addendum eliminated her right to receive a surplus aside, there is a genuine issue of material fact as to whether Johnson would have been entitled to a surplus, as explained below. Therefore, there is a genuine issue of material fact as to whether Johnson suffered any "ascertainable loss of money or property . . . as a result" of the language in the RISC addendum. KRS 367.220(1).

Taylor Auto calculated the amount remaining on Johnson's account on a document titled "Collection Account Form." (Pl.'s Mot. Summ. J. Ex. E, at 2, DN 20-6 [hereinafter Collection Account Form]). The Collection Account Form states that Johnson had an ending balance of $14,265.61 on her account, but for purposes of calculating the amount to "sue for," Taylor Auto used a starting value of $10,190.70, labelled as "Pay Off's [sic]". (Collection Account Form 2). Taylor Auto added $500.00, representing the "Total Fee's [sic]," to arrive at a "Total Balance" of $10,690.70. (Collection Account Form 2). Taylor Auto subtracted the price that the vehicle was resold for, $10,495.00, from the "Total Balance" to arrive at a deficiency of $195.70.

Notably absent from the parties' briefing and exhibits is any explanation for how the "Pay Off's" figure of $10,190.70 was calculated. (Collection Account Form 2). In her second set of interrogatories, Johnson asked, "In response to Plaintiff's First Request for Production of Documents, you supplied a document titled 'Collection Account Form' . . . . The Collection Account Form notes a Pay Off amount of $10,190.70. Please Explain in detail how this number was calculated." (Pl.'s Mot. Summ. J. Ex. F at 3, DN 20-7 [hereinafter Def.'s Resp. 2d Interrog.]). Taylor Auto responded, "See attached amortization schedule (Exhibit #2)." (Def.'s Resp. 2d Interrog. 3). The referenced amortization schedule was not included in the exhibits to Johnson's motion, but a document titled "amortization schedule" was included as an independent exhibit to Taylor Auto's response. (Def.'s Resp. Pl.'s Mot. Summ. J. Ex. 4, DN 25-4 [hereinafter Amortization Schedule]). Although the number $10,190.70 is not shown on the Amortization Schedule, it appears to be the sum of the amount that Johnson financed, $9,992.98, and the interest charged on the first payment, $197.72. (Amortization Schedule 1). The Amortization Schedule notes that the total finance charge over the course of the loan was to be $3,647.67. (Amortization Schedule 1).

Johnson argues that Taylor Auto failed to properly refund unearned finance charges which resulted from an incorrect calculation of a deficiency on her account. (Pl.'s Mem. 13-15). Johnson cites to *Credit Alliance Corp. v. Adams Construction Corp.*, 570 S.W.2d 283 (Ky. 1978), in asserting that "*Credit Alliance* stands for the proposition that a creditor may not declare a debt accelerated and also collect pre-computed but unaccrued interest and finance charges." (Pl.'s Mem. 13 (citing *Credit All.*, 570 S.W.2d at 286)); *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 292 (Ky. 1991). Johnson has not, however, established that Taylor Auto failed to refund unearned finance charges. In *Credit Alliance*, the Kentucky Supreme Court specifically

6

noted that, "The parties agree and have practiced the case on the premise that this transaction was a loan, and the terms 'finance charges" and "time-price differential' were regarded as the equivalent of 'interest' compensation for the use of money." *Credit All.*, 570 S.W.2d at 285 (citation omitted). Johnson does not argue that Taylor Auto failed to refund the $3,647.67 finance charge, but instead asserts that Taylor Auto failed to refund "the $399 Service Contract or the Service Contract Tax" as well as "the $546 Motor Vehicle Usage Tax." (Pl.'s Mem. 13-15). Johnson does not offer any argument for why these amounts should be understood to be finance charges. (*See* Pl.'s Mem.). The nature of the charges would seem to indicate that they should not. Both charges were a part of the amount initially financed and do not appear to have been "the equivalent of 'interest' compensation for the use of money." *Credit All.*, 570 S.W.2d at 285 (citation omitted); (Pl.'s Mot. Summ. J. Ex. A at 1, DN 20-2). Therefore, *Credit Alliance* does not support Johnson's claim.

The only other authorities Johnson provides in support of her argument that Taylor Auto violated KCPA by failing to refund these charges are cases from Georgia and Texas. (Pl.'s Mem. 14-15 (citing *Clyde v. Liberty Loan Corp.*, 287 S.E.2d 551 (Ga. 1982); *Palace Indus., Inc. v. Craig*, 339 S.E.2d 313 (Ga. Ct. App. 1985); *Jim Walters Homes, Inc. v. Schuenemann*, 668 S.W.2d 324 (Tex. 1984); *Dryden v. City Nat'l Bank of Laredo*, 666 S.W.2d 213 (Tex. App. 1984); *Com. Credit Corp. v. Chasteen*, 565 S.W.2d 342 (Tex. App. 1978); *Brookshire v. Longhorn Chevrolet Co.*, 788 S.W.2d 209 (Tex. App. 1990))). Even ignoring that these cases were not considering KCPA, all but one of the cases dealt only with acceleration of interest charges. *Palace Indus.*, 339 S.E.2d at 338 (involving a claim to recover an accelerated debt including interest); *Schuenemann*, 668 S.W.2d at 324 (citation omitted) (considering "[w]hether the inclusion of an acceleration clause, and the attendant contingency that excess unearned interest may be collected or retained, makes a

7

contract usurious . . . ."); *Dryden*, 666 S.W.2d at 221 (holding that "demand letters demanding full payment, which included . . . unearned interest, constituted" a violation of a Texas statute); *Chasteen*, 565 S.W.2d at 343 (considering whether interest was usurious); *Brookshire*, 788 S.W.2d at 212 (addressing whether acceleration clause permitted usurious interest). The remaining case, *Clyde*, found that failure to rebate unearned maintenance charges and credit insurance premiums violated a Georgia law specifically requiring rebates of unearned maintenance charges and credit insurance premiums. *Clyde*, 287 S.E.2d at 553. None of these cases are applicable here.

Johnson has failed to offer any authority supporting the assertion that Taylor Auto violated KCPA by failing to refund the price of the service contract, the service contract tax, or the motor vehicle tax. Therefore, Johnson has not met her "initial burden of stating the basis for [her] motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact." *Scarborough v. Ingram Barge Co.*, No. 5:14-CV-00080-GNS-LLK, 2016 WL 6901693, at *1 (W.D. Ky. Jan. 8, 2016) (citing *Celotex Corp.*, 477 U.S. at 322).

Finally, Johnson briefly argues that Taylor Auto violated KCPA by charging a $200.00 repossession fee and $300.00 "clean up fee" in connection with the repossession and resale of the vehicle. (Pl.'s Mem. 15). Johnson asserts that "there is no control over this self-awarded fee; nor are there receipts or other evidence that justify the charge." (Pl.'s Mem. 15). Taylor Auto's owner, Riggs, explains in his affidavit that the $200.00 repossession fee includes a fee charged by a third party who Taylor Auto hired to repossess the vehicle, and that the amount is typical in the industry. (Riggs Aff. ¶ 11-12). Riggs also states that the $300.00 cleaning fee is appropriate for the "work needed to adequately clean each vehicle in preparation for sale." (Riggs Aff. ¶18).

Based on Riggs' declaration , there is at least a genuine issue of material fact as to whether "reasonably prudent person of common intelligence" would consider the repossession and cleaning

8

fees to be "false, misleading, [or] deceptive." *Maynard*, 2012 WL 2571160, at *3 (quoting *Stevens*, 759 S.W.2d at 820).

Accordingly, Johnson's motion is denied as to her claims under KCPA.

### B. TILA Claim

Johnson asserts that Taylor Auto had a duty under TILA to rebate unearned finance charges under Section 1666d. (Pl.'s Mem. 15-16). Section 1666d states:

> Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) **rebates of unearned finance charges or insurance premiums**, or (3) amounts otherwise owed to or held for the benefit of an obligor, the creditor shall—
> (A)  credit the amount of the credit balance to the consumer's account . . . .

15 U.S.C. § 1666d (emphasis added). Johnson contends that the finance charges at issue are: (1) a $399.00 service contract; (2) a $23.94 sales tax for the service contract; (3) a $569.94 motor vehicle usage tax; (4) a $33.00 title fee; and (5) a $22.00 lien fee. (Pl.'s Reply Mot. Summ. J. 1, DN 26 [hereinafter Pl.'s Reply]). Johnson claims that Taylor Auto admits that it did not pay the motor vehicle usage tax and that it did not refund the tax to Johnson after it repossessed the vehicle. (Pl.'s Reply 1).

TILA defines "finance charge" as:

> the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction.

15 U.S.C. § 1605(a). Under this definition, it is not clear that any of the charges Johnson relies on are "finance charges" as contemplated by TILA, and Johnson makes no showing that these charges should be so considered nor offers even a perfunctory briefing on the subject. (*See* Pl.'s Rep. 5-7).

9

As an initial matter, Taylor Auto's discovery responses deny that either the $33.00 title fee or the $22.00 lien fee were computed as a part of Johnson's remaining balance after the repossession sale. (Pl.'s Mot. Summ. J. Ex. F, ¶¶ 11, 15 (DN 20-7)). Therefore, even ignoring whether these charges constitute "finance charges" as defined by Section 1605(a), Johnson has not pointed to any evidence that Taylor Auto actually included these charges in the payoff amount. Accordingly, there is at least a genuine issue of material fact whether these charges were credited to Johnson's account.

As to the motor vehicle usage tax, Section 1605(a) is clear that the finance charge "does not include charges of a type payable in a comparable cash transaction." There has been no evidence that this tax would not be payable in a comparable cash transaction. Therefore, absent some explanation that the vehicle would not be subject to sales tax if Johnson had purchased the vehicle with cash, there is at least a factual issue as to the motor vehicle usage tax.

Finally, neither party discusses whether the service contract and accompanying sales tax were entered into incident to the financing, or whether the service contract would be offered to a cash buyer. Without this information, the Court cannot determine whether the service contract fee constitutes a "finance charge" as defined by Section 1605(a). Therefore, there is an issue of fact as to whether the service contract and accompanying sales tax constitute finance charges as defined by Section 1605(a)

Accordingly, considering the motion for summary judgment in the light most favorable to Taylor Auto, Johnson has failed to establish that she is entitled to judgment as a matter of law.

## IV. **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (DN 20) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

January 9, 2024

cc: counsel of record

11